IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA MASS LING,

    Plaintiff,

vs.                                              No. CIV 96-1772 MV

MARTY BRACHFELD, d/b/a
LAW OFFICES OF BRACHFELD &
SHEPPARD,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Partial Summary Judgment, filed May 5, 1999 **[Doc. 85]** and Defendant's Objection to Plaintiff's Exhibits, filed May 19, 1999 [**Doc. 89**]. The Court, having considered the motions, responses, replies, relevant law and being otherwise fully informed, finds that the Objection to Plaintiff's Exhibits is not well taken and will be **DENIED** and that the Motion for Partial Summary Judgment is well-taken and will be **GRANTED**, as explained below.

### BACKGROUND

Plaintiff Veronica Maas Ling ("Ling") here brings suit against attorney Marty Brachfeld d/b/a Law Offices of Brachfeld & Sheppard ("Brachfeld"), as a result of Brachfeld's debt collection practices. Ling asserts three cause of action: (1) violation of the Federal Fair Debt Collection

Practices Act ("FDCPA"); (2) violation of the New Mexico Unfair Practices Act; and (3) tortious debt collection.

Defendant does not contest any of the facts as summarized in Plaintiff's motion for partial summary judgment but objects that the "excerpts of alleged deposition testimony are incomplete and not certified," and that "[c]opies of alleged articles of evidence attached to Plaintiff's [brief] are not certified," "as provided by" Fed.R.Civ.P. 56. *See* Defendant's Objection to Plaintiff's Exhibits. Defendant's objection contains no citation to case law and fails to alert the Court to any portion of Rule 56 which requires the parties to submit the certification page of the deposition transcript and/or the entire transcript. As Plaintiff points out, Rule 56 only requires that documents submitted with affidavits be "[s]worn or certified copies." Fed.R.Civ.P. 56. Ling has in fact provided the Court with affidavits attesting that the documents provided are true and exact copies. Further, Defendant does not raise any objection that the documents or depositions are not in fact true and accurate. Accordingly, the Court finds that Defendant's objection to the exhibits is not well taken and will be denied.

Based on the record before the Court, which again the Court notes Defendant does not contest, the Court finds that the following are the undisputed material facts:

1. In the summer of 1996, Ling was indebted to Household Credit for a Visa card, in the sum of $2,371.00. Ling is thus a "consumer" as defined by the FDCPA.

2. Collection on this debt was referred to the Brachfeld Office. Marty Brachfeld is an attorney, licensed to practice in the State of California, who engages in debt collection and is a "debt collector" as defined by the FDCPA.

2

3. On or about August 13, 1996, Ling received a "dunning" letter from the Brachfeld Office, seeking to collect on the Visa debt. The letter was sent on letterhead captioned "Law Offices of Brachfeld & Sheppard." The letter stated, in part, "[a]t this time, it has not been determined whether or not a lawsuit will be filed against you." The letter instructed Ling to call the Brachfeld Office if she wished to arrange payment.

4. Ling called the office on August 13, 1996, after business hours, but did not receive an answer.

5. Ling called the office again the next day on August 14, 1996. John Keach ("Keach"), a Brachfeld employee, immediately called Ling back in order for the call to be charged to the business rather than to her.

6. Keach and Ling spoke for 26.7 minutes. Ling states that during this call, Keach "was very forceful, and he was demanding answers to questions that I felt had nothing to do with the account," regarding where Ling and her husband worked and their sources of income. Ling continues, "[h]e was demanding way more than I could possibly pay him . . . ." Asked when she decided that the conversation was abusive, Ling responded, "[p]retty much when I hung up the phone with him. I was crying . . . . I was just frantic when I got off the phone. I was in tears. I had to go back to work. I was really in no state of mind to do that but I had to. I was very distraught by all of his questions and his demands and his threats." Asked for more specifics as to what she found abusive, Ling stated, "the manner in which he was asking the questions. He was demanding answers. He was making idle threats to me that he was going to sue me or making me believe that he was able and going to do things that I knew he really couldn't do, but he put me in the position that he made me feel that I had no choice but to answer him and clarify these things." When asked about the threats Keach was

making, Ling stated, "[h]e was asking me about my car and if it was paid for and this and that, and making me believe that he was going to take possession of my vehicle and wanting to know how to get a hold of my husband and asking who made more money and threatening to garnish wages and threatening to sue me." Although, based on her own work experience in debit collection, Ling "felt he could not do those things," the conversation left Ling with the impression that, "[t]heir plan was not to clear the debt; it was to take me for everything I had."[1]

7. At the time she spoke to Keach, Ling was six months pregnant. She informed Keach of this during the telephone call.

8. On the same day, August 14, 1996, a Brachfeld employee called Ling's employer in order to verify employment. The Brachfeld employee spoke with Barbara Dale ("Dale"), a coworker of Ling's. The unidentified employee informed Dale that he was "calling about a debt on Veronica." Dale is unsure about the details of the phone call but believes that the caller specifically stated that Ling owed a Visa debt and stated the amount as well.

9. The next day, Ling called United Recovery, the company that had contracted the collection of Ling's debt to the Brachfeld Office, to complain about Keach's conduct. She informed United Recovery that she wanted to clear the debt but that she did not want any more dealings with the Brachfeld Office or their employees.

10. Three days after the first phone call, on August 17, 1996, Keach again called Ling. However, this time Keach identified himself as "John Koss" and used an Australian accent when

---

[1] The record also reflects that, in discussing these experience during her deposition, Ling again began to cry.

speaking to Ling. During this conversation, Ling made arrangements to satisfy the debt, agreeing to make a $371 payment by the end of August and $100 monthly payments thereafter.

11. Six days later, on August 22, 1996, a second Brachfeld employee, Victor Keach, called Ling's home. He left a message with Ling's husband that she needed to send a payment by Western Union the next day.

12. On August 28, 1996, Ling mailed Brachfeld the first payment of $371, as agreed on. This payment was received and logged by United Recovery on August 29, 1996.

13. On September 5, 1996, Victor Keach called Ling again requesting additional payments. At that time, Ling instructed him that she did not want to receive any more phone calls regarding the debt.

14. Eleven days later, on September 16, 1996, Victor Keach called Ling again. She again told him not to call her anymore regarding this debt.

15. On September 21, 1996, Ling mailed Brachfeld a payment which included a letter instructing that Brachfeld employees were not to telephone her home anymore regarding the debt.

16. On October 7, 1996, a third Brachfeld employee, Ed Warren ("Warren"), called Ling at her home. Ling asked if Brachfeld had received her payment and Warren indicated they had. She then informed him that the payment was accompanied by a letter instructing that all phone calls to her home were to cease. Warren immediately ended the phone call.

17. Ling filed the present lawsuit on December 17, 1996.

18. On or about March 25, 1997, Brachfeld mailed Ling another collection letter regarding the Visa debt, despite the fact that the office knew she was represented by counsel in this matter.

**STANDARD OF REVIEW**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

**ANALYSIS**

Plaintiff moves for summary judgment in her favor on Counts 1 and 2, alleging violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the New Mexico Unfair Practices Act ("UPA"), N.M.S.A. § 57-12-3. As noted, Defendant does not dispute the facts as related by Plaintiff but argues that these facts do not demonstrate violations of the FDCPA or the UPA as a matter of law. The Court disagrees, finding that the undisputed facts demonstrate that Brachfeld violated both the FDCPA and the UPA.

**A.    FDCPA Claim**

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors . . . ." 15 U.S.C. § 1692(e). The relevant provisions of the Act prohibit a debt collector from revealing to third parties that the consumer owes a debt, 15 U.S.C. § 1692b(2); prohibit a debt collector from communicating directly with the consumer if the debt collector "knows the consumer is represented by an attorney with respect to such debt," 15 U.S.C. § 1692b(6); and prohibits a debt collector from contacting the consumer at any "time or place known or which should be known to be inconvenient to the consumer," 15 U.S.C. § 1692c(a)(1). The Act further provides that,

> If a consumer notifies a debt collector in writing that . . . the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except–
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor;  or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

7

> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c). The FDCPA also provides that, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt [including but not limited to] . . . (6) . . . the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d. Finally, the Act states that, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt [including but not limited to] . . . (5) [t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e.

Plaintiff asserts that Defendant violated all of these provisions of the FDCPA. Specifically, Plaintiff argues that the following conduct by Defendant violated the provisions cited above: (1) disclosure to Ling's coworker that she owed a debt; (2) mailing a collection letter directly to Ling after Defendant knew she was represented by counsel on this matter; (3) calling Ling at home after being orally informed that this was not convenient; (4) calling Ling at home after receiving a written notice to cease all telephone communications; (5) engaging in harassing and deceptive practices by an employee's use of a false name and accent; (6) engaging in harassing and abusive conduct in the content and number of telephone calls to Ling; and (7) making false and deceptive misrepresentations that Defendant would proceed to sue Ling when Defendant did not intend to take such action.

"Although the plaintiff has alleged that the defendant has violated several provisions of the Act, a single violation is sufficient to establish civil liability." *Austin v. Great Lakes Collection Bureau, Inc.*, 834 F.Supp. 557, 559 (D.Conn.1993); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993); *see* §15 U.S.C. 1692k (establishing liability for "any debt collector who fails to comply

with any provision of this subchapter"). The Court finds that the undisputed facts demonstrate that Defendant did commit at least four violations of the FDCPA, as described below.

1. Disclosure of Debt to Third Party

The undisputed facts demonstrate that a Brachfeld employee disclosed to Ling's coworker that he wished to speak with Ling about a debt she owed. Defendant argues that the record reveals that the coworker, Dale, is "unsure" about the conversation. In fact, the record reveals that Dale is "unsure" only about the details of the conversation but that she remembers quite clearly that the Brachfeld employee revealed that Ling was in debt. Thus, the undisputed facts demonstrate that Defendant violated the FDCPA by disclosing that Ling was in debt to a third party. 15 U.S.C. § 1692b(2); *see Austin*, 834 F.Supp. at 559 (rejecting defendant's contention that affidavit of third party was insufficient to demonstrate disclosure where defendant offered no contrary evidence).

2. Communication with Consumer Represented by Counsel

The undisputed facts demonstrate that Brachfeld sent Ling a collection letter on the same Visa debt which led to the current law suit in March of 1997, well after Defendant was on notice that Ling was represented by counsel in the instant action. Defendant argues that the FDCPA does not prohibit a debt collector from communicating with a consumer who is represented by counsel "for all purposes." Defendant is correct that a debt collector may communicate with a represented consumer regarding *another debt. See Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991); *Hubbard v. National Bond and Collection Associates, Inc.*, 126 B.R. 422, 426, (D.Del.1991) aff'd 947 F.2d 935 (3rd Cir. 1991). However, the Act specifically prohibits communicating with the consumer directly if the collector "knows the consumer is represented by an attorney with respect to *such debt*." 15 U.S.C. § 1692b(6); *Hubbard*, 126 B.R. at 426. By filing the instant lawsuit relating to Brachfeld's

9

collection practices regarding the Visa debt, counsel of record undertook representation of Plaintiff regarding collection of the debt at issue. Defendant was given actual notice of this representation when served, in January of 1997. Thus, the undisputed facts demonstrate that Defendant violated the FDCPA by communicating with a consumer the debt collector knew was "represented by an attorney with respect to such debt." 15 U.S.C. § 1692b(6); *Herbert v. Monterey Financial Services, Inc.*, 863 F.Supp. 76, 79 (D.Conn. 1994) (letter to consumer five days after defendant was informed she was represented by counsel on that debt violated FDCPA).

    3.    Phone Calls to Consumer After Written Notice to Cease

The undisputed facts demonstrate that a Brachfeld employee called Ling after she had sent and they had received a written notice instructing them not to call her any further. Defendant's only argument regarding this issue is that Plaintiff has failed to establish that the Brachfeld employee was not calling for one of the three limited purposes permitted by the statute. *See* 15 U.S.C. § 1692c(c). As Plaintiff rightly points out, if the Brachfeld employee was calling for a permitted purpose, then he would have in fact carried out that purpose, either at that time or through a later call. In fact, on being informed that she had sent written notice to cease all phone calls, the employee immediately ended the call. Defendant offers no evidence whatsoever tending to support its theory that the employee was calling for a legitimate reason. Thus, the undisputed facts demonstrate that Defendant violated the FDCPA by calling the consumer after a written notice to cease such communication. 15 U.S.C. § 1692c(c).

    4.    Employees Use of an Alias and Accent

The undisputed facts demonstrate that the Brachfeld employee who spoke to Ling for nearly thirty minutes on August 14th, leaving her in tears, called back the next day using a false name and

affecting a false accent in order to induce Ling to enter into a payment agreement. Defendant does not even offer an argument as to why this does not constitute harassing and deceptive behavior. Indeed, the Court finds it to be both a violation of the prohibition against "the placement of telephone calls without meaningful disclosure of the caller's identity," 15 U.S.C. § 1692d(6) and the prohibition against "false, deceptive, or misleading representation," 15 U.S.C. § 1692e. Accordingly, the Court finds that the undisputed facts demonstrated that Defendant violated the FDCPA by engaging in harassing and deceptive behavior.

While the Court believes that many of Ling's additional claims under the FDCPA may also have merit, the Court need not reach these issues. Having concluded that Defendant has clearly violated the FDCPA in at least four distinct ways, Plaintiff is entitled to judgment in her favor on this claim as a matter of law. *Austin*, 834 F.Supp. at 559.

### B. UPA Claim

The New Mexico Unfair Practices Act prohibits the use of "unfair or deceptive trade practice." NMSA 1978, § 57-12-3. Such practices are defined, in pertinent part, as, "any false or misleading oral or written statement . . . knowingly made in connection with the . . . collection of debts by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person . . ." NMSA 1978, § 57-12-2(C). "This general definition is followed by a nonexclusive list of various examples," *Page & Wirtz Consturct. Co. v. Solomon*, 110 N.M. 206, 209, 794 P.2d 349 (1990), including "stating that the transaction involves right, remedies or obligations that it does not involve." § 57-12-2(D)(15).

In order to establish a violation of the UPA, the plaintiff must show: (1) that the defendant "made an oral or written statement . . . that was either false or misleading;" (2) that the false

11

representation was "knowingly made in connection with the . . . collection of debts;" (3) that the conduct complained of "occurred in the regular course of the representer's trade or commerce;" and (4) that the representation was of the type that "may, tends to or does, deceive or mislead any person." *Ashlock v. Sunwest Bank of Roswell*, 107 N.M. 100, 101, 753 P.2d 346 (1988), overruled on other grounds by *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 899 P.2d 576 (1995). "The UPA applies to all misleading or deceptive statements, whether intentionally or unintentionally made." *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Company*, 170 F.3d 985, 994 (10th Cir. 1999) (quoting *Ashlock, supra*).

In the present case, Plaintiff asserts that Defendant violated the UPA by: (1) stating that a suit would be filed against her when Defendant did not intend to do so; (2) telling her that she needed to wire a payment immediately; and (3) by the false name and false accent used by the Brachfeld employee to deceive Plaintiff into entering a payment agreement. Defendant does not contest any of these points but, rather, argues that Plaintiff cannot press a claim under the UPA because she has no actual monetary damages.

Section 57-12-10(B) of the UPA states,

> [a]ny person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

N.M.S.A. 1978 §57-12-10(B). Interpreting this section, the New Mexico Supreme Court stated,

> recovery of damages under paragraph (B) includes only those persons "who suffer any loss of money or property." The paragraph authorizes recovery of "actual damages"

or the sum of one hundred dollars, whichever is greater. Such damages might be suffered either by a consumer of goods or services, or the commercial competitor of an enterprise engaged in deceptive trade practices. However, in either case the aggrieved party must produce evidence of "loss of money or property" as a result of the practice. The record in this case reflects no such loss. Therefore, recovery is limited to one hundred dollars, which may be trebled by the court when the party willfully has engaged in the unfair or deceptive practice.

*Solomon*, 110 N.M. at 211-12.

Although Defendant is correct that the New Mexico Supreme Court stated that "the aggrieved party must produce evidence of 'loss of money or property' as a result of the practice." However, the court continued to hold that, in the absence of such evidence, the plaintiff was entitled to recover the nominal award. *Id*. While this Court agrees that the holding of *Solomon* appears to conflict with the language quoted by Defendant, the latter is only dicta while the former is the controlling precedent set by the case. Thus, in the present case, Plaintiff may proceed with her UPA claim in the absence of evidence of actual monetary or property loss, though she is limited to the recovery of the nominal damages. *Id*.

Further, the Court finds that the undisputed facts demonstrate that Defendant violated the UPA when his employee used a false name and accent in order to induce Plaintiff to enter a payment agreement. The undisputed facts demonstrate that (1) the employee "made an oral or written statement . . . that was either false or misleading;" (2) the false representation was "knowingly made in connection with the . . . collection of debts;" (3) that the conduct complained of "occurred in the regular course of the representer's trade or commerce;" and (4) that the representation was of the type that "may, tends to or does, deceive or mislead any person." *Ashlock*, 107 N.M. at 101. Thus, the Court finds that, based on the undisputed facts, Plaintiff is also entitled to judgment in her favor on the UPA claim as a matter of law.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Objection to Plaintiff's Exhibits [**Doc. 89**] is hereby **DENIED** and that Plaintiff's Motion for Summary Judgment **[Doc. 85]** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that **JUDGMENT IS HEREBY ENTERED IN FAVOR OF PLAINTIFF** as to Count 1 (Fair Debt collection Practices Act) and Count 2 (New Mexico Unfair Trade Practices Act).

                                          MARTHA VÁZQUEZ
                                          UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:                    Attorneys for Defendants:
    Susan Warren                         Louis Vener